IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**RUDI WEIS, et al.,**<br><br>Defendants. | Case No. 5:19-cv-04108-HLT |

## MEMORANDUM AND ORDER

This is a declaratory-judgment action. Plaintiff Progressive Northwestern Insurance Company contends that it does not owe insurance coverage for an accident that occurred on February 3, 2019. Defendants are various individuals who were involved in the accident. Progressive and Defendant Samantha Duckett both move for summary judgment on essentially the same issue: whether Missouri law requires the policy to provide coverage for a U-Haul truck involved in the accident. The Court finds that the unambiguous policy does not cover the U-Haul and Missouri law does not require additional language to be read into the policy. Accordingly, Progressive's motion is granted and Duckett's motion is denied.

### I.     BACKGROUND

The Court considers the following uncontroverted facts. On February 3, 2019, Michael Weis ("Michael") was driving a U-Haul truck on Interstate 70 in Leavenworth County, Kansas, when he was involved in a collision with several other vehicles. The accident resulted in bodily injury and property damage and has spawned at least two state-court actions in addition to this case. Duckett was among those injured in the accident and now claims the policy provides coverage for the accident. The U-Haul was a box truck owned by U-Haul Co. of Arizona and had

been rented by Rudi Weis ("Rudi"), Michael's son, to move some property from Columbia, Missouri, to Topeka, Kansas.

The U-Haul was a self-propelled vehicle designed for use on the highway. It had a gross vehicle rating of 14,500 pounds and had a passenger cab at the front of the truck and cargo area that was accessible by a door at the rear of the truck. The cargo area and the cab were physically separated by a wall.

Progressive issued an automotive liability policy to Rudi effective November 15, 2018, to May 15, 2019. Progressive issued the policy to Rudi using a Missouri address. Rudi was the named insured and the only driver on the policy. The only vehicles listed on the policy were a 2012 Volkswagen Golf and a 1999 Ford truck, neither of which were involved in the accident.

Under the policy, Progressive agreed to "pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident."[1] The policy includes the following definitions:

> 2. "**Auto**" means a land motor vehicle:
>
>    a. of the private passenger, pickup body, or cargo van type;
>    b. designed for operation principally upon public roads;
>    c. with at least four wheels; and
>    d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
>
>    However, "**auto**" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.
>
> [. . . .]
>
> 5. "**Covered auto**" means:

---

[1] Bolding is from the original policy and represents specifically defined terms.

        a.      any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
        b.      any **additional auto**;[2]
        c.      any **replacement auto**;[3] or
        d.      a **trailer** owned by **you**.

[. . . .]

**ADDITIONAL DEFINITION**

When used in this Part I:

"**Insured person**" means:

a.      **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;

b.      any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;

c.      any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and

d.      any "Additional Interest" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.

The policy also states: "If any provision of this policy fails to conform to the statutes of the state listed on your application as your residence, the provision shall be deemed amended to conform to such statutes."

Progressive filed this declaratory-judgment action seeking a ruling that there is no coverage under the policy because the U-Haul does not meet the definition of "auto" or "covered auto," and therefore Michael does not meet the definition of "insured person." Doc. 71 at 3. Michael and

---

[2] "**Additional auto**" under the policy is an auto "**you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page**" if certain other criteria are met.

[3] "'**Replacement auto**' means an **auto** that permanently replaces an **auto** shown on the **declarations page**."

3

Duckett argue that the policy does provide coverage because the Missouri Motor Vehicle Financial Responsibility Law and Missouri public policy mandate coverage.[4]

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.   ANALYSIS

Both Progressive and Duckett move for summary judgment.[5] The primary issue raised by both motions is whether the policy covers the U-Haul. Ultimately, it is the burden of Michael and Duckett to establish coverage. *See State Farm Mut. Auto. Ins. Co. v. Stockley*, 168 S.W.3d 598, 600 (Mo. Ct. App. 2005). Progressive argues that the U-Haul does not meet the policy's definition of "auto" or "covered auto" and this means there is no coverage for the U-Haul under the policy.

---

[4]  Duckett has asserted a counterclaim for declaratory judgment that there is coverage under the policy. Doc. 51 at 12-15. Michael just defends against Progressive's claim, but effectively for the same reasons. Doc. 71 at 5. Only Progressive, Michael, and Duckett have participated in summary-judgment briefing. There are several other defendants who have not appeared, or who have appeared and adopt by reference Duckett's positions. *Id.* As explained below, the issues raised in the motions are dispositive of the entire case as to all parties.

[5]  Progressive filed a response to Duckett's motion, but Duckett did not reply. *See* Docs. 74, 75, and 82. Michael and Duckett separately opposed Progressive's motion, and Progressive filed replies to both. *See* Docs. 72, 73, 79, 81, 85, and 86.

4

Michael and Duckett argue that the policy provides coverage for the U-Haul's involvement in the accident because a Missouri statute requires a broader definition of "motor vehicle" to be read into the policy.[6]

There doesn't seem to be any dispute that the U-Haul does not meet the definition of "auto" under the policy. *See Risher v. Farmers Ins. Co.*, 200 S.W.3d 84, 88 (Mo. Ct. App. 2006) ("In general, definitions in an insurance policy are controlling as to the terms used within the policy."). It is undisputed that "auto" is defined by the policy as a land motor vehicle "with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications." It is undisputed the U-Haul has a gross vehicle rating of 14,500 pounds. The policy also excludes from the definition of "auto" "step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area." It is undisputed that the U-Haul was a box van with a cab that was separate from the cargo area. Nor does anyone argue that it meets the definition of a "covered auto," which either refers back to the definition of "auto" or refers to an "additional auto" or "replacement auto," neither of which definition applies to the U-Haul. Accordingly, it is undisputed that the U-Haul is not covered under the unambiguous language of the policy.[7] *See Progressive Nw. Ins. Co. v. Handshumaker*, 662 F. App'x 630, 631 (10th Cir. 2016) (finding that policy did not cover Budget Rental box truck under similar definition); *Risher*, 200 S.W.3d at 88 ("Because the insurance policy defines 'motor vehicle,' that definition is controlling.").

Michael and Duckett argue that a Missouri statute contains a broader definition of "motor vehicle" that must be read into the policy, which would then require coverage for the U-Haul. The

---

[6] The parties agree that Missouri law controls. *See* Doc. 73 at 9 (stating that "Progressive believes Missouri law likely controls"); Doc. 79 at 12 (Michael's response stating that Missouri law applies); Doc. 81 at 1 (Duckett's response stating that Missouri law applies).

[7] Neither Michael nor Duckett argue that any specific policy language is ambiguous, including the definitions of "auto" or "covered auto." *See Safeco Ins. Co. of Ill. v. Palazzolo*, 481 F. Supp. 3d 921, 928 (E.D. Mo. 2020) (stating that unambiguous policy language will be enforced as written).

5

Missouri statute at issue is the Motor Vehicle Financial Responsibility Law ("MVFRL"). *See* Mo. Rev. Stat. § 303.010. The purpose of the MVFRL is to ensure that insured parties can collect at least minimal damages against negligent parties. *Cashon v. Allstate Ins. Co.*, 190 S.W.3d 573, 576 (Mo. Ct. App. 2006). Accordingly, the MVFRL sets certain minimum limits for motor-vehicle insurance coverage. *See Dutton v. Am. Fam. Mut. Ins. Co.*, 454 S.W.3d 319, 324 (Mo. 2015). If a policy excludes the minimum coverage, that coverage is nevertheless read into the policy. *Id.*

The MVFRL defines a "motor vehicle liability policy" as "an owner's or an operator's policy of liability insurance." Mo. Rev. Stat. § 303.190.1. The MVFRL sets different minimum standards for coverage depending on whether the policy is based on ownership or operation of a vehicle. *Dutton*, 454 S.W.3d at 324.

An owner's policy is one that "designate[s] by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted," and it must "insure the person named therein and any other person, as insured, using any <u>such motor vehicle or motor vehicles</u>" in accordance with certain statutory minimums. Mo. Rev. Stat. § 303.190.2 (emphasis added). "Covered vehicles must be designated expressly either by listing them explicitly or by other reference that identifies which vehicles are covered." *Dutton*, 454 S.W.3d at 324-25 (stating that, for an owner's policy, the minimum coverage requirements apply "only when the damages arise out of the insured's use of 'such' designated motor vehicle"); *see also Sisk v. Am. Fam. Mut. Ins. Co.*, 860 S.W.2d 34, 36 (Mo. Ct. App. 1993) (noting that "[a]n owner's policy is the type of automobile insurance generally purchased by the public").

An operator's policy must "insure the person named as insured therein against loss from the liability imposed upon him or her by law for damages arising out of the use by him or her of <u>any motor vehicle not owned by him or her</u>" for the same minimum amounts. Mo. Rev. Stat.

§ 303.190.3 (emphasis added); *see also Sisk*, 860 S.W.2d at 36 ("[An operator's policy] is seldom purchased by the general public.").

The key distinction between an owner's policy and an operator's policy is that an owner's policy specifically describes all vehicles covered by the policy while an operator's policy does not insure a particular vehicle. *See State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560, 567 (Mo. Ct. App. 1998) (citation omitted). The MVFRL defines "motor vehicle" as:

> a self-propelled vehicle which is designed for use upon a highway, except trailers designed for use with such vehicles, traction engines, road rollers, farm tractors, tractor cranes, power shovels, well drillers, motorized bicycles as defined in section 307.180, electric bicycles as defined in section 301.010, and every vehicle which is propelled by electric power obtained from overhead wires but not operated upon rails[.]

Mo. Rev. Stat. § 303.020(5). Thus, for an owner's policy, the covered vehicles are determined by the policy, while an operator's policy covers the insured's use of "any motor vehicle" as that term is defined by the statute.

Progressive argues that the policy at issue is an owner's policy and plainly excludes the U-Haul from coverage. But Michael and Duckett argue that the MVFRL's operator's provision and the MVFRL's definition of "motor vehicle" must be read into the policy to include coverage for the U-Haul. They make slightly different arguments as to why this is the case, but neither is persuasive.

Duckett effectively contends that the MVFRL requires every policy to be both an owner's policy and an operator's policy. *See* Doc. 75 at 9. But that is not correct. *Sisk*, 860 S.W.2d at 35 ("Nothing in this section requires the policy to be both an owner's and an operator's policy."). And to the extent Duckett argues that the MVFRL's operator's provision is invoked whenever a non-owned vehicle is involved in an insurance claim, *see* Doc. 81 at 2-3, that is not correct either. The

distinction is whether the policy covers owned or non-owned vehicles, not simply whether the vehicle involved in the accident is owned or non-owned by the policyholder. *See Karscig v. McConville*, 303 S.W.3d 499, 503 n.7 (Mo. 2010) ("[W]here a person buys a policy for a vehicle she does not own, that policy is an operator's policy." (emphasis added)). An insurer is not obligated to cover a non-designated vehicle under an owner's policy simply because an insured uses that vehicle. *See Dutton*, 454 S.W.3d at 325 ("Owners and insurers alike would be surprised to learn that their purchase of insurance on a single motor vehicle made them the insurer of all passenger cars.").

Michael likewise argues that the operator's provision of the MVFRL, and its reference to "motor vehicle" as that term is defined by the MVFRL, must be read into the policy. Although he doesn't dispute that the policy is an owner's policy, he contends that the policy is both an owner's policy and an operator's policy and thus must conform to the MVFRL's minimum-coverage standards for both types of policies. *See* Doc. 79 at 16. There are two problems with this argument.

First, Michael contends that the "policy provides that Progressive will pay damages for which an 'insured person' becomes legally responsible because of an accident, and provides coverage not only for autos which the insured owns, ***but also*** any for auto that the insured ***uses*** [sic]." *Id.* at 18 (emphasis in original). In this way, Michael contends "the Progressive policy at issue herein explicitly insures the use of vehicles not specifically delineated in the policy and, therefore, the MVFRL's operator's coverage provision is implicated." *Id.* In support of this argument, however, Michael does not identify which part of the policy he is relying on. He only cites "SOF ¶ 12," which is a statement of fact in Progressive's motion that quotes several parts of the policy. Michael, as the party seeking coverage, has a duty to show that coverage applies, and

8

he fails to meet this burden by not identifying the specific part of the policy he is relying on in this instance. *See Stockley*, 168 S.W.3d at 600.

The Court has reviewed the provisions of the policy quoted in SOF ¶ 12 and cannot find any language that extends coverage to "any" auto Rudi (the insured) "uses." To the extent Michael is referring to the "insured person" provision, that provision obligates Progressive to pay damages "for which an **insured person** becomes legally responsible because of an accident." "Insured person" is defined as "**you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**" (underlining added). But "use of an **auto**" is not the same thing as "use of any auto." As noted above, the definition of "auto" is specifically defined under the policy and that definition excludes the U-Haul. It is circular to read coverage for "use of an **auto**" as that term is defined by the policy to somehow incorporate the broader definition of "motor vehicle" found in the MVFRL. *See Shelter Mut. Ins. Co. v. Harter*, 940 S.W.2d 555, 556 (Mo. Ct. App. 1997) ("The policy does not use the words 'any motor vehicle,' and explicitly does not intend 'any auto' to mean 'any motor vehicle' as that term is defined under the statute."). Thus, as a factual matter, Michael has not shown that the policy is both an owner's and an operator's policy because it broadly covers use of non-owned or non-delineated vehicles.[8]

Second, even if the policy contained some operator's coverage and could be considered both an owner's and operator's policy,[9] Missouri courts have rejected the contention that a policy that includes both owner and operator coverage must also satisfy the minimum requirements of

---

[8]  This also makes Michael's (and Duckett's) reliance on *Dutton* inapposite. *See* Doc. 79 at 16-17. In *Dutton*, the policy did cover "the use of a car." which the court used to consider application of the operator's provision of the MVFRL. *Dutton*, 454 S.W.3d at 326. But here, the language is "use of an auto," and "auto" is specifically limited to certain designated cars under the policy, which is indicative of an owner's policy. *See id.* at 325; *see also* Mo. Rev. Stat. § 303.190.2.

[9]  The Supreme Court of Missouri has stated, "This Court does not know of a situation in which a policy can be both an owner's and an operator's policy." *Karscig*, 303 S.W.3d at 503 n.7.

9

both the MVFRL's owner and operator provisions. *See DeMeo v. State Farm Mut. Auto. Ins. Co.*, 686 F.3d 607, 611 (8th Cir. 2012) ("This contention is contrary to a host of appellate decisions holding that an owner's policy that complies with § 303.190.2 may provide additional, operator's coverage(s) that are more limited than what an operator's policy must provide to comply with § 303.190.3."); *see also Scheel*, 973 S.W.2d at 567 ("[W]here there is coverage which complies with either § 303.190.2, for an owner's policy, or § 303.190.3, for an operator's policy, any added or excess coverage not required under one or the other does not have to comply with the requirements of the MVFRL."); *Sisk*, 860 S.W.2d at 36 ("[E]ither an owner's or an operator's policy satisfies the requirements of the MVFRL."). This is consistent with another MVFRL provision, which states that coverage in excess of the required coverage need not comply with the statute. *See* Mo. Rev. Stat. § 303.190.7.

Rather, if a policy complies with the MVFRL's requirement for an owner's policy, it does not have to comply with the statute's requirements for an operator's policy. *Shelter Mut. Ins. Co. v. Ridenhour*, 936 S.W.2d 857, 857 (Mo. Ct. App. 1997) ("We find that the policy complies with the owner's policy requirements and the MVFRL only requires policies to comply with one or the other, but not both."); *First Nat. Ins. Co. of Am. v. Clark*, 899 S.W.2d 520, 523 (Mo. 1995) ("It is sufficient to say that because there was an owner's policy in effect, no operator's policy of liability insurance on the same vehicle is required by the Missouri financial responsibility law.").

Here, neither Michael nor Duckett dispute that the policy complies with the MVFRL's minimum requirements for an owner's policy. It is undisputed that the policy specifically covered vehicles owned by Rudi and specifically provided coverage for those delineated vehicles. *See* Mo. Rev. Stat. § 303.190.2. To the extent the policy satisfies the MVFRL's requirements for an owner's policy, it need not satisfy the MVFRL's requirements for an operator's policy. Thus, even if the

policy contained additional operator's coverage, there is no basis to read into the policy the operator's provision of the MVFRL and it's more expansive definition of "motor vehicle." This leaves in place the definition of "auto" and "covered auto" in the policy, which does not extend to the U-Haul. Accordingly, Progressive is entitled to summary judgment.[10]

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff Progressive Northwestern Insurance Company's Motion for Summary Judgment (Doc. 72) is GRANTED. Judgment is to be entered in favor of Progressive.

THE COURT FURTHER ORDERS that Defendant Samantha Duckett's Motion for Summary Judgment (Doc. 74) is DENIED. Judgment is to be entered in favor of Progressive on Duckett's counterclaim.

THE COURT FURTHER ORDERS that this case is closed.

IT IS SO ORDERED.

Dated: September 16, 2021         /s/ *Holly L. Teeter*
                                                               HOLLY L. TEETER
                                                               UNITED STATES DISTRICT JUDGE

---

[10] The parties make additional arguments about other language under the policy. Specifically, Duckett argues that because Michael was acting as Rudi's agent, coverage under the policy extends to Rudi through principles of vicarious liability. But this argument is dependent on the Court disregarding the policy's definition of "auto" for the definition of "motor vehicle" under the MVFRL. *See* Doc. 75 at 10 ("Nothing in the policy prevents coverage for this collision except for the policy definition of '**auto**.'"). Michael likewise argues that he and Rudi were "using" the U-Haul sufficient to invoke coverage. Doc. 79 at 22-24. But again, this depends on the U-Haul being covered under the policy. Finally, Progressive argues that coverage is not available under the policy because neither Rudi nor Michael meet the definition of an "insured person" under the policy. Doc. 73 at 17. These arguments are all derivative of or alternative to the issue about the definition of "auto." Because the Court finds that the U-Haul is not covered under the language of the policy and that the MVFRL does not require otherwise, it does not reach these additional arguments.